UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PIERPORT DEVELOPMENT & REALTY, INC., | ) | Bankruptcy No. 12 B 09546 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ARENSON, et al., | ) | |
| Plaintiffs, | ) | Adversary No. 13 A 00225 |
| | ) | |
| v. | ) | |
| | ) | |
| ADMINISTRATIVE DISTRICT COUNSEL 1 | ) | |
| OF ILLINOIS INTERNATIONAL UNION OF | ) | |
| BRICKLAYERS AND ALLIED | ) | |
| CRAFTWORKERS, AFL-CIO and BARRY | ) | |
| A. CHATZ, as CHAPTER 7 TRUSTEE, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION ON ADMINISTRATIVE COUNCIL 1
MOTION TO DISMISS**

This matter relates to the chapter 7 bankruptcy case of Pierport Development & Realty, Inc. ("Debtor" or "Pierport"). Pierport is one of several businesses owned by Peter Arenson ("Arenson"). Prior to bankruptcy, Pierport entered into a collective bargaining agreement ("CBA") with the Administrative District Council 1 of Illinois of the International Union of Bricklayers and Allied Craftworkers, AFL-CIO (the "Union"). An arbitration board later found that the other businesses owned by Arenson and Arenson individually ("the Arenson Parties")[1] were bound by the CBA and jointly liable with Pierport for violations of that agreement. After Pierport filed for bankruptcy protection, the Arenson Parties filed this adversary proceeding seeking declaratory and injunctive relief to prevent the Union from pursuing certain

---

[1] Those businesses are: **Error! Main Document Only.**Pierport Construction, Inc.; Half Day Road Investments, LLC; Half Day Road Development, LLC; Toledo 442 Building Corp.; Arenson Management, Inc.; Residences on Schubert, LLC; 1546 N. Mohawk, LLC; Chicago Energy Investments, Inc.; Austin Fleet Services, Inc.; Chicago Go-Gen Energy, LLC; 3416 N. Greenview, LLC.

counterclaims now pending in a related District Court case. The Union filed a Motion to Dismiss this adversary proceeding. It was briefed by the Plaintiffs and Union, but not by the Chapter 7 Trustee. For reasons stated below, the Union's Motion will be granted in part and denied in part by separate order.

## BACKGROUND

Prior to bankruptcy, an arbitrator found Pierport liable for $178,181.33, payable to the Union, several Union members, and several fringe benefit trust funds identified in the CBA. A District Judge for the Northern District of Illinois subsequently enforced the arbitration award and entered judgment against Pierport.

The Union initiated post-judgment collection proceedings and determined it had a basis for a claim against Arenson personally and several of his other businesses for binding themselves to the CBA through their course of conduct. The Union informed the Arenson Parties of its claim and scheduled that claim for presentation to the arbitration board. The Arenson Parties communicated their belief that the arbitration board had no authority over them and did not participate in the hearing. The case went forward without them and the arbitrators ruled that the Arenson Parties were bound to the CBA. Accordingly, the arbitrators ruled that the Arenson Parties were liable for all violations by themselves, each other, and Pierport. The arbitration decision stated:

> After hearing the charges, arguments, testimony and evidence . . . the Joint Arbitration Board rendered its decision and finds that [the Arenson Parties] are bound to the collective bargaining agreement signed on behalf of Pierport Development and Realty, Inc., and have been bound to that collective bargaining agreement since it was signed on October 5, 2009 . . . For that reason, [the Arenson Parties] are found to be jointly responsible . . . for violations of the [CBA], including the violations that the Joint Arbitration Board previously found [Pierport] committed, and [the Arenson Parties] are jointly liable for all damages and amounts due as a result of violations, including the damages and other obligations imposed by the judgment order issued by the federal court against [Pierport] on September 27, 2011.
> ***
> Based on our conclusions in this ruling, the Joint Arbitration Board finds that [the Arenson Parties] must satisfy all obligations that already exist, must comply with the [CBA] when performing any further work within the geographic and craft jurisdiction of [the Union] until making all payments required and satisfying all other obligations.

(Ex. E to Complaint)

The Arenson Parties filed suit in the United States District Court, seeking to vacate the arbitration award. After Pierport filed its bankruptcy petition the suit in District Court was held in abeyance on the Union's motion. The Union later sought to return that suit to active status and the District Judge granted that request. The Union filed an Answer and Counterclaim seeking to enforce the arbitration award or, in the alternative, seeking an order piercing Pierson's corporate veil and holding the Arenson Parties liable for Pierport's obligations under the original arbitration award against Pierport. The Arenson Parties then filed this adversary complaint, twice amended, seeking to obtain a declaratory judgment here that the Defendant is barred from asserting certain counterclaims it filed in the District Court lawsuit. This adversary complaint also seeks to enjoin the Union from pursuing those counterclaims. The Union has now moved to dismiss Plaintiff's Second Amended Complaint.[2]

On September 27, 2011, a U.S. District Court Judge in the Northern District of Illinois entered a judgment order in favor of the Union against the debtor in District Court Case No. 10 C 7800, Pierport Development & Realty, Inc. ("Pierport" or "Debtor"), awarding the Union $238,534.84 plus post-judgment interest on the unpaid balance (the "Judgment Award"). (Objection to Claim Ex. 1, at 5–6.) To collect on its judgment, the Union instituted a supplementary proceeding in that case under 735 ILCS 5/2-1402, and a Citation to Discover Assets (the "Citation") was issued. That was served on Pierport on October 12, 2011. On December 16, 2011, Pierport's sole shareholder, Peter Arenson, appeared for examination in that supplementary proceeding. Under Illinois law, discussed below, service of the Citation on Pierport gave the Union a statutory lien on all unencumbered property interests that Pierport held or thereafter acquired (the "Citation Lien").

On March 12, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* The chapter 7 trustee ("Trustee") conducted an investigation of the assets and liabilities of the bankruptcy estate (the "Estate") and determined that as of the petition date, Debtor's assets that could potentially be liquidated for benefit of all creditors consisted of certain equipment and vehicles, the value of which to the Estate was estimated at $30,350.00. In addition, the Trustee identified as part of the

---

[2] The Second Amended Complaint was filed on June 13, 2013, after the Union's Motion to Dismiss was filed on May 20, 2013. The Union stands on its original Motion to Dismiss despite an opportunity to revise the Motion and supporting memorandum. (Dkt. No. 27) The First Amended Complaint added the chapter 7 Trustee as a defendant. (Dkt. No. 11)

3

Estate three potential fraudulent transfer claims against various entities (the "Fraudulent Transfer Claims"), including payments to Debtor's sole shareholder Peter Arenson, and to certain affiliated businesses (together with Arenson, the "Arenson Parties").

Negotiations between the Trustee and the Arenson Parties resulted in a proposed settlement agreement, wherein the Arenson Parties would pay a total of $325,000 to the Trustee, and in exchange the Trustee would assign to Arenson the estate's interest in any and all machinery, equipment and vehicles, all other tangible assets, the name and any trademarks of Pierport, and any cemetery plots or properties (the "Transferred Assets"). The settlement also included a mutual release, whereby the Trustee would agree to release all Estate claims against the Arenson Parties arising out of "alter ego, piercing of the corporate veil, preference avoidance, fraudulent transfer avoidance, or other such theories . . . ." The Trustee sought Court approval of the original proposed settlement agreement, but the Union objected on ground that the agreement purported to release not only the Trustee's claims but also any third-party claims against the Arenson Parties. The settlement agreement was revised to specifically provide that no claims aside from those held by the Trustee would be released (the "Revised Settlement Agreement").

The Union filed a Motion to modify the stay that was denied by order of May 30, 2012. (Dkt. No. 89) The Union then filed a motion to amend or clarify that order, which was also denied by order of January 9, 2013. (Dkt. No. 95) However, in an Opinion entered April 26, 2013, this Court reopened *sua sponte* the hearing on the Union's motion to amend or clarify. That Opinion, relying on Seventh Circuit precedent, stated that "[w]hen a third party has injured not the bankrupt corporation itself but a creditor of that corporation, the trustee in bankruptcy cannot bring suit against the third party [and] has no interest in the suit." (Dkt. No. 135, at 3) (quoting *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994)). The Opinion further stated that "it is now apparent that the Union's claims are asserted to be individual to it and not derivative of its status as a creditor in [Pierport's] bankruptcy case." (Dkt. No. 135, at 3). It further stated that the Union's counterclaims do not appear to be claims for "fraudulent transfer," but instead arise under alter ego, veil piercing, and single employer theories. The Opinion further noted the absence of any pleaded facts to show that the Trustee ever had alter ego or veil piercing claims.

With respect to the Union's asserted right to pursue its counterclaim to enforce the arbitration award against the Arenson Parties, the Opinion stated:

4

> [T]he Union does have standing to the extent it seeks enforcement of the Arbitration Award entered against the Arenson Parties because those claims appear to be personal claims by it, not derivative. [The Union] might also have argued that those parties are not protected by the automatic stay and therefore, no stay modification was necessary except as a "comfort order" to avoid an issue in the District Court case.

(*Id.*)

The Opinion further stated that, based on the original ruling on the Union's lift-stay motion, the Arenson Parties had sought "a release of not only their fraudulent transfer liability to the Trustee but also their possible liability to the Union under the Arbitration Award." (*Id.* at 6) It described the effort by the Arenson Parties and the Trustee to obtain approval for a settlement that would release the Union's claims as "clearly an overreach." (*Id.*) The Opinion then explained that the Revised Settlement Agreement left open the question of "whether the Union held any independent claims against the Arenson Parties. (*Id.* at 7)

At the hearing on Union's Motion to Clarify, this Court had reasoned why the original settlement proposal would not be approved, stating that it would "not approve language in a deal where somebody tries to give away someone else's claim . . . . Very often in bankruptcyland, A and B settle by taking something away from C. . . ." (Tr. Nov. 19, 2012, at 27)

The Arenson Parties Second Amended Adversary Complaint pending here contains only one count but seeks two forms of relief. The first request seeks declaration: (i) that pursuant to §§ 323, 541, 544, and 550 of the Bankruptcy Code, that only the Trustee has standing and authority as representative of the estate and its creditors as a class to bring alter ego, veil piercing, and similar claims asserted in the Union's counterclaims; (ii) that counterclaims filed by the Union in the District Court case belong to the Trustee and are property of the estate; (iii) that those counterclaims have been released pursuant to the terms of the Settlement Agreement; (iv) that the Union has no standing to pursue the counterclaims; and (v) that those counterclaims do not create any colorable basis for particularized injury to the Union. The second request for relief here seeks an injunction under § 105(a) of the Bankruptcy Code enjoining the Union from pursuing its counterclaims pending in the District Court case. The Union's Motion to Dismiss argues that the Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (made applicable in bankruptcy by Fed. R. Bankr. P. 7012(b)).

5

## JURISDICTION AND VENUE

Jurisdiction lies over this proceeding under 28 U.S.C. § 1334(b), and authority over this matter has been referred here by Internal Operating Procedure 15(a) of the District Court. This matter concerns allowance or disallowance of claims against the estate and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue lies here under 28 U.S.C. § 1409(a).

## DISCUSSION

### Standard for Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) and Rule 12(c) accepts all well-pleaded allegations in the complaint as true and requires all reasonable inferences to be drawn in favor of the non-movant. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010); *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010); *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2010), *cert. denied*, 133 S. Ct. 353 (2012).

To survive a motion to dismiss under Rule 12(b)(6): "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)); *accord Reger*, 592 F.3d at 764. Under this standard, "a plaintiff must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Id. (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008)).

### Effect of Prior Orders

The Union first argues that the amended complaint in this adversary proceeding cannot survive the order of May 9th (Dkt. No. 148) vacating the previous order denying the Union's motion for relief from the automatic stay and this Court's April 26th Opinion and Order reopening the hearing on the Union's Motion to Clarify (Dkt. No. 135). According to the Union, those orders determined that the Union's effort to enforce the arbitration award against the Arenson Parties is not an asset of the Pierport bankruptcy, actionable only by the chapter 7 Trustee. The Union asserts that those prior orders establish that its efforts to enforce the

6

arbitration award against the Arenson Parties are personal to it, based on harm the Arenson Parties allegedly caused to the Union, rather than any harm the Arenson Parties may have caused the Debtor Pierport.

Those prior orders, however, did not definitively establish whether or not the Union is free to pursue its claims against the Arenson Parties. The April 26 Opinion and Order only re-opened the hearing on the Union's Motion to Clarify and asked for further briefing as to what authority the Arenson Parties assert to be protected by the automatic stay. (Dkt. No. 135, at 7) However, the May 9 order also stated that: "the Union will not violate the stay if it pursues causes of action based on harm allegedly caused to it if such harm did not also harm all creditors or assets of the estate." (Dkt. No. 148)

### Standing to Pursue Claims Against Arenson Parties

The Arenson Parties brought the amended complaint here to block the Union's pursuit of counterclaims in the District Court suit, contending that the Trustee has exclusive standing to pursue alter ego, veil piercing, and similar claims and that the Union's counterclaims were released by the Trustee's settlement with the Arenson Parties. The Union responded correctly that the Trustee was without power to release the Union's own claims. "It is axiomatic that a Chapter 7 trustee may only release claims that he has the power to assert. . . . [I]f a claim is personal to the particular creditor, the trustee has no standing to assert such a claim, and, therefore, no power to settle or release it." *In re Cent. Ill. Energy, LLC*, 406 B.R. 371, 373–74 (Bankr. C.D. Ill. 2008).

The issue posed here is whether the Union's counterclaims pleaded in the District Court case are personal to it or common to all of Pierport's creditors so that only the Trustee may pursue those claims. The Union's Counterclaim Count I in the District Court seeks the Arenson Parties' compliance with the CBA, remedy for breach of that agreement, and enforcement of the arbitration board award. The Union's Counterclaim Count II in the District Court asks that the District Court pierce the Debtor's corporate veil and hold the Arenson Parties liable for the arbitration board award.

### *The Union's Counterclaims*

The Union argues that its primary claims for enforcing the arbitration award against the Arenson Parties are unique to labor law such that the Trustee could not pursue or settle them. The first of its claims arises under the federal common law "single-employer doctrine." This

7

doctrine has been developed by federal courts pursuant to § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185. *See Textile Workers Union of Am. v. Lincoln Mills of Alabama*, 353 U.S. 448, 456–57 (1957). The single-employer doctrine holds "that when two entities are sufficiently integrated, they will be treated as a single entity for certain purposes." *Moriarty v. Svec*, 164 F.3d 323, 332 (7th Cir. 1998) (citing *Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv.*, 380 U.S. 255 (1965)). Finding that nominally separate entities are a single employer binds those separate entities to a CBA signed by one of them. *Svec*, 164 F.3d at 332.

The Union points out that if it is able to pursue and prevail on its single-employer claim, the outcome would not be the liquidation of any of the Debtor's assets. Rather, success for the Union would be in the form of a judgment that one or more of the Arenson Parties are bound to the CBA and liable for obligations that the arbitrators imposed directly on them pursuant to the arbitral findings that they were bound to the CBA. According to the Union, the Debtor and Trustee would have no basis or standing to argue that the Arenson Parties are bound to the CBA with the Union as found by the arbitrators; only the Union may argue that.

The Union also seeks to pursue a "labor law alter ego" claim to enforce the arbitration award against the Arenson Parties. Although alter ego and veil piercing are often used synonymously in commercial and bankruptcy law, the Union contends that the alter ego doctrine created under federal common law of labor contracts is different. This theory binds a nominally separate entity or individual to another entity's collective bargaining agreement when the status of the nominally separate entity is "an attempt to avoid the obligations of a collective bargaining agreement, such as through a sham transfer of assets." *Int'l Union of Operating Engineers, Local 150 v. Centor Contractors, Inc.*, 831 F.2d 1309, 1312 (7th Cir. 1987) (quoting *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 24 (1st Cir. 1983)). The Union argues that the Trustee has no right to purse its labor law alter ego theory against the Arenson Parties and therefore also could not have released that claim because it is "personal" to the Union.

The Arenson Parties argue that the Union's alter ego theories all arise from the same group of factual allegations to the effect that the Arenson Parties took certain actions that warrant disregard of their corporate forms. Therefore, they contend that the Union is really seeking alter ego liability due to the bankruptcy estate by another name. The Arenson Parties contend that there is no authority for the Union's legal conclusion that labor law contains some form of alter

8

ego or veil piercing doctrine that differs substantively from the traditional alter ego doctrine. They also argue that the single employer doctrine overlaps with traditional alter ego principles.

However, the issue here is not what legal theories the Union seeks recovery under. Rather, the relevant inquiry is whether the Union suffered an injury personal to it distinguishable from harm suffered by all of the estate's creditors. It is to that issue that the rest of the discussion is addressed. As noted by the brief of the Arenson Parties, "it is the conduct that causes the alleged injury, not the particular cause of action or other legal theory [] that determines whether the bankruptcy trustee has standing." (Pl. Response 16)

### *Standards for Determining Whether a Claim is "Personal" to a Creditor*

"Article III of the United States Constitution requires that a party seeking judicial resolution of a case or controversy have standing to present [their] claim." *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339, 1342 (1987), *cert. denied*, 485 U.S. 906 (1988) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "Central to that requirement as well is injury of the litigant bringing the action." *Koch*, 831 F.2d at 1342.

The Seventh Circuit has considered what it means for a claim to be "personal" to a creditor. The Union relies on *Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) where the trustee sought to sue the debtor's owners based on a creditor's veil piercing claim. *Steinberg* refused to allow the trustee to bring that claim, holding that it was "personal" to the creditor, and that a trustee "has no right to enforce entitlements of a creditor." *Id.* at 893. The *Steinberg* Opinion explained that a trustee can sue a debtor-corporation's owners for harm they caused to the corporation, but a trustee cannot sue the debtor-corporation's owners on a creditor's claims that the debtor-corporation's owners are directly liable under veil piercing. *Id.* Rather, it held that only the creditors have standing to bring those claims, and they must do so outside of bankruptcy, as the Union is attempting to do here by pursuing its counterclaims in the District Court. *See id.*

The Arenson Parties rely primarily on the Seventh Circuit opinion in *Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339 (1987), *cert. denied*, 485 U.S. 906 (1988). That Opinion held that only a bankruptcy trustee could pursue an alter ego theory of recovery against member/owners of an oil refinery, reasoning, "[i]t is axiomatic that the trustee has the right to bring any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct . . . . In that capacity, the trustee

9

acts to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution. He also has creditor status under section 544 to bring suits on behalf of the estate and ultimately of the creditors." *Id.* at 1348. A bankruptcy trustee, however, has no standing to pursue personal claims of creditors. "A cause of action is 'personal' if the claimant himself is harmed and no other claimant or creditor has as interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors [i]f the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors . . . ." *Id.* at 1348–49. "[A] single creditor may not maintain an action on his own behalf against a corporation's fiduciaries if that creditor shares in an injury common to all creditors and has personally been injured only in an indirect manner." *Id.* at 1349.

A more recent Seventh Circuit case, *In re Teknek, LLC v. Sys. Division, Inc.*, 563 F.3d 639 (7th Cir. 2009), presents facts similar to those here. In *Teknek*, the assets of the debtor and an affiliate were transferred to a separate new entity after the creditor's patent infringement action was initiated against the debtor. *Id.* at 641. After judgment was entered on that action, the debtor's shareholders and the new entity were joined in the action as alter egos liable for the judgment. *Id.* The judge in the patent infringement action found that the shareholders were the alter egos of the debtor and that they were directly liable for the patent judgment. *Id.*

As the patent case proceeded, the debtor filed its chapter 7 petition and the chapter 7 trustee filed an adversary proceeding against the debtor's shareholders. *Id.* Among other things, the trustee contended that the shareholders were the alter ego of the debtor. *Id.* at 643. The bankruptcy judge ruled that the claim against shareholders for the amount of judgment was property of the bankruptcy estate, and that the creditor should be and was enjoined from seeking recovery of the judgment from the shareholders. *Id.* at 642. On appeal, the District Judge found that the creditor's claims alter ego claims were not property of the estate and were not related to the bankruptcy case. *Id.* The District Judge therefore held that the creditor was not subject to the automatic stay under § 362 or to an injunction under § 105. *Id.* The Court of Appeals upheld that judgment of the District Judge, holding that the creditor, rather than the trustee, was entitled to pursue the judgment against shareholders. *Id.*

The *Teknek* Opinion agreed with and explained the reasoning of the District Judge, who first considered whether the automatic stay extended to the creditor's claim. *Id.* at 643–44. The District Judge held it did not because the creditor's claim was "personal to it and independent of

any claim a hypothetical general creditor could have brought" against the debtor. *Id.* at 644. The District Judge had reasoned that the creditor sought to collect on its judgment from the debtor's shareholders who had been held directly liable in the patent judgment. *Id.* The District Judge then considered whether the creditor's claim was nevertheless "related to" the bankruptcy case so that the bankruptcy judge had jurisdiction over it. *Id.* The District Judge concluded that the creditor's claim was not "related to" the bankruptcy case because no other creditor of the debtor could claim patent infringement and because allowing collection on that claim would not prevent the trustee from pursuing fraudulent transfer claims to recover assets on behalf of the estate. *Id.*

Although the *Teknek* Opinion agreed with reasoning of the District Judge, it explained that:

> the fact that the underlying harm suffered by [the creditor] was patent infringement does not, by itself, make it a claim no other creditor could assert. By such logic, all creditors' claims would be personal to the specific creditor: a supplier's claim for payment of supplies would be deemed personal because no other creditor could claim payment for the same supplies; an employee's claim for his back pay would be personal to the extent that no other employee could claim back pay for the employee's hours worked. If all such claims were "personal," no creditor would have to wait in line behind the bankruptcy trustee to assert her claims. With such segregation of claims, the bankruptcy system would collapse. What is significant about [the creditor's] patent infringement claim is not that it is for patent infringement; instead significance lies in [the creditor's] reduction of the claim to judgment against both the debtor *and an independent nondebtor* . . . .

*Id.* (emphasis in original).

*Teknek* further considered whether the creditor was entitled to pursue the debtor's shareholders on a theory of alter ego liability. *Id.* at 645. To determine whether the creditor or the trustee held that right, the Opinion reasoned:

> The purpose and duty of the trustee is to gather the estate's assets for pro rata distribution to the estate's creditors. In aid of that duty . . . the trustee has the sole right and responsibility to bring claims on behalf of the estate and on behalf of creditors as a class – so called "general" claims. But the trustee's right to bring claims on behalf of creditors is not infinite. Individual creditors retain the right to bring "personal" claims that do not implicate the trustee's purpose. The distinction between "general" and "personal" claims ensures that the trustee will be able to fulfill the purpose of the bankruptcy laws without allowing the bankruptcy jurisdiction to swallow claims only tangentially related to the debtor. . . .

*Id.* at 646 (citations omitted). That Opinion further explained that "the trustee has no standing to bring 'personal' claims of creditors, which are defined as those in which the claimant has been

harmed and 'no other creditor has an interest in the cause. [A]llegtions that could be asserted by any creditor could be brought by the trustee as representative of all creditors If the liability is to all creditors of the corporation without regard to the personal dealings between such officers and such creditors, it is a general claim. . . ." *Id.* (citing *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998).

To determine whether an action belongs individually to a creditor or generally to a corporation therefore requires examination of the injury for which relief is sought by the Union in the District Court case. *Id.* at 647.

The Arenson Parties argue that the Union has not alleged an injury unique to it because all of the Debtor's creditors suffered the same injury caused by the alleged disregard for the corporate separateness of the Debtor and the Arenson Parties.

They further argue that the Union's claims against them for breach of the CBA artificially define claims as personal in the way *Teknek* criticized. However, as in *Teknek*, what makes the Union's claims significant is that it has been reduced to an arbitration award in favor of the Union and against both the debtor and independent nondebtors referred to here as the Arenson Parties. The Arenson Parties sidestep that issue by arguing that the award was based on the alter ego doctrine and so only the Trustee now has standing to seek recovery on that award. The Union's claim of right to pursue alter ego claims is discussed further below. However, Counterclaim Count I in the District Court case is not based on alter ego liability. Rather, it is based on the arbitration board's findings and award in favor of the Union.

In *Teknek*, the creditor's claim against the shareholders was not dependent upon the shareholders' misconduct against the debtor, since the affiliate was also directly liable for the judgment and the shareholders were also alter egos of the affiliate. *Id.* at 648. The fact that shareholders controlled both the debtor and the affiliate was insufficient to include the creditor's claim in the debtor's bankruptcy. *Id.* That is the case here as well. With respect to Counterclaim Count I, Pierport creditors other than the Union were not shown by pleadings to have been injured by the Arenson Parties' asserted breach of the CBA. As in *Teknek*, the Union seeks in that Count to achieve compliance with the prior arbitration ruling which held that the Arenson Parties themselves are bound by the CBA.

With respect to Count II of the District Court case, however, the Union pleads facts showing an injury to the Debtor-corporation that may be pursued only by the Trustee as

12

representative of all creditors. *See Koch*, 831 F.2d at 1438. Count II alleges, among other similar things, that at all relevant times, Pierport and all of the Arenson Parties: received mail at the same office; shared fax machines, computers, and copy machines; never maintained records showing proportional use of the shared fax machines, computers, and copy machines; did not sign written lease agreements in connection with the shared office space; shared the same vehicles without reimbursing each other; and shared use of a CAT Paver without record of which entity owned it. (Second Amended Complaint, Counterclaim Count II, Ex. A)

The Arenson Parties argue that the Trustee had a valid basis for asserting alter ego based on his authority to marshal the estate's assets on behalf of all creditors. However, individual creditors may not seek to "pierce the corporate veil" where the creditor's claims are nearly identical to those asserted by the bankruptcy trustee and the trustee has not abandoned the claim, but rather settled and released it. *In re Am. Hawk Enterprises*, 52 B.R. 395, 399 (E.D. Va. 1985). Thus, the Union has not alleged in Counterclaim Count II "personal harm" to it arising from conduct of the Arenson Parties. Therefore the Trustee has sole standing to assert alter ego or similar claims on behalf of the estate based on asserted facts.

The Arenson Parties reason that in Counterclaim Count II the Union alleged the same injury as would have been suffered by all creditors of the estate. For example, the Union alleges that in some instances Pierport may have paid a disproportionate amount of expenses as compared to the Arenson Parties. Such disproportionate payment could have depleted its revenues otherwise available to pay its creditors. However, all creditors would have suffered the same injury. However, the Union does not allege in Counterclaim Count II any dealings with them that would have any effect on the Union different from the effect on other creditors.

In *Teknek*, the trustee argued that it could also pursue an alter ego claim against the debtor's shareholders for looting the debtor. *Id.* The *Teknek* Opinion reasoned that the shareholders were liable to the debtor for the patent infringment judgment because of their responsibility for the debtor's inability to pay it. *Id.* Therefore, "[i]n essence, then, both [the creditor] and the trustee have a claim against the alter egos, but only one of them can receive satisfaction, because the patent judgment can only be recovered once." *Id.* In this case, only the Trustee may pursue similar claims.

13

## CONCLUSION

For reasons stated above, the Motion is granted in part and the Second Amended Complaint for Declaratory Judgment and Temporary Injunction will be dismissed to the extent it seeks to prevent Administrative Council 1 from pursuit of its Counterclaim Count I seeking enforcement of the collective bargaining agreement entered against the Arenson Parties and to the extent the complaint seeks to prevent recovery by Administrative Council 1 on the arbitration board award of October 5, 2009 from the Arenson Parties (as defined in the Memorandum Opinion).

The Motion is denied in part and the Second Amended Complaint will not be dismissed to the extent it seeks declaratory and injunctive relief on Administrative Council 1's Counterclaim Count II seeking alter ego liability against the Arenson Parties. An injunction will be entered barring the Union from pursuing that cause of action.

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 9th day of August, 2013.